IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRANCE BARKER, | :    Civil No. 1:25-cv-2020 |
|       Petitioner | :    (Judge Mariani) |
| v. | : |
| PENNSYLVANIA PAROLE BOARD, PENNSYLVANIA ATTORNEY GENERAL'S OFFICE, | : |
|       Respondents | : |

**MEMORANDUM**

Petitioner Terrance Barker ("Barker") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging decisions of the Pennsylvania Board of Probation and Parole (the "Parole Board" or the "Board"). (Doc. 1). For the reasons discussed below, the Court will deny the habeas petition.

**I.**   **Background**

On September 4, 2008, Barker was convicted on two counts of rape, one count of burglary, and one count of criminal trespass, in the Court of Common Pleas of Delaware County. *See Commonwealth v. Barker*, 2014 WL 10917389, *1 (Pa. Super. 2014). On December 18, 2008, Barker was sentenced to an aggregate term of 14 to 40 years' incarceration. *See id.*; *see also* Doc. 11-2, Sentence Summary. The Department of Corrections ("DOC") calculated Barker's minimum sentence as December 9, 2021, and his original maximum sentence as December 9, 2047. (Doc. 11-2).

On September 2, 2021, the Parole Board issued a decision granting Barker parole on or after December 9, 2021. (Doc. 11-3, September 2, 2021 Parole Decision). The Board also calculated Barker's new maximum date as December 9, 2047. (*Id.*). On October 26, 2021, the Parole Board modified its September 2, 2021 decision to reflect a new parole date of June 9, 2022, following a DOC sentence restructuring. (Doc. 11-4, October 26, 2021 Parole Decision). His new maximum date was June 9, 2048. (*Id.*).

On September 27, 2023, Barker was recommitted as a convicted parole violator to a term of 12 months for convictions related to domestic battery. (Doc. 11-5, September 27, 2023 Parole Decision). In its written decision, the Parole Board recommitted Barker based on a copy of the court record establishing his new conviction, and the fact that he was "not amenable to parole supervision" and was "considered a threat to the safety of the community." (*Id.* at 1). The Parole Board noted that, while confined, Barker must "abide by the rules and regulations of the institution and comply with the institution's prescriptive program requirements." (*Id.*). He must also be evaluated for "mental health, sex offender, drug and alcohol, batterer's intervention, violence prevention and thinking for a change treatment and participate in any treatment determined appropriate." (*Id.*). The Parole Board further stated that Barker would be reviewed for re-parole on or after August 30, 2024, and established a new parole violation maximum date of July 27, 2048. (*Id.*).

The Parole Board denied Barker parole via a written decision dated September 23, 2024. (Doc. 11-6, September 23, 2024 Parole Decision). In its written denial, the Parole

Board pointed out that in denying parole, it considered its interview with him, its review of his file, and "all matters required pursuant to the Prisons and Parole Code." (*Id.* at 1). The Parole Board also indicated that it denied Barker parole because of: (1) his "risk and needs assessment indicating [his] level of risk to the community"; (2) his "prior unsatisfactory parole supervision history"; (3) "reports, evaluations and assessments/level of risk indicates [his] risk to the community"; and (4) his "minimization/denial of the nature and circumstances of the offense(s) committed. (*Id.*). The Parole Board further stated that Barker would be reviewed for parole "in or after September[ ] 2025[,]" and that, at his next interview, the Board would consider whether he: (1) "maintained a favorable recommendation for parole from the Department of Corrections" and (2) "maintained a clear conduct record." (*Id.*). The Board noted that Barker's parole violation maximum date was to remain as July 27, 2048. (*Id.*).

The Parole Board again denied Barker parole on October 14, 2025. (Doc. 11-7, October 14, 2025 Parole Decision). In its written decision, the Parole Board pointed out that in denying parole, it considered its interview with him, its review of his file, and "all matters required pursuant to the Prisons and Parole Code." (*Id.* at 1). The Parole Board also indicated that it denied Barker parole because of: (1) his "prior unsatisfactory parole supervision history"; (2) his "minimization/denial of the nature and circumstances of the offense(s) committed; (3) his "refusal to accept responsibility for the offense(s) committed; (4) his "lack of remorse for the offense(s) committed; (5) the fact that he was a "repeat

offender"; and (6) "the nature of [his] crime." (*Id.*). The Parole Board further stated that Barker would be reviewed for parole "in or after September 2026[,]" and that, at his next interview, the Board would consider whether he: (1) "maintained a favorable recommendation for parole from the Department of Corrections" and (2) "maintained a clear conduct record." (*Id.* at 1-2). His parole violation maximum date remained as July 27, 2048. (*Id.* at 1).

Barker did not file an action in the Commonwealth Court of Pennsylvania or the Supreme Court of Pennsylvania to challenge the Parole Board decisions.

In light of these parole denials, Barker filed the instant habeas petition claiming that he has been denied parole "for no legitimate reasons." (Doc. 1, at 2).

## II.    Legal Standards

### A.    Challenges to Parole Denials Under Section 2254

A state prisoner's challenge to the denial of parole is cognizable under Section 2254. See *Coady v. Vaughn*, 251 F.3d 480, 486 (3d Cir. 2001) (determining that jurisdiction to entertain state prisoner's habeas petition challenging denial of parole lies under Section 2254 and not 28 U.S.C. § 2241). However, a federal district court may not grant parole or determine parole eligibility. See *Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 944 (2d Cir. 1976). Instead, "[t]he only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged

from custody." *Id.*; *see also Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 105 (3d Cir. 1992) (explaining that "the relief a court may grant [from a parole denial] is limited").

      B.     <u>Due Process Challenges to Parole Denials</u>

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," nor has the Commonwealth of Pennsylvania created such a right. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing general principle that Pennsylvania's parole statute does not create a liberty interest in the right to be paroled); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the [Parole Board] have a corresponding duty to grant the same.").

"Since a discretionary decision of the Parole Board denying an inmate early parole does not implicate any constitutionally [or state] protected liberty interest, the scope of federal judicial review of these decisions is necessarily quite limited." *Diehl-Armstrong v. Pa. Bd. of Prob. & Parole*, No. 13-cv-02302, 2014 WL 1871509, at *5 (M.D. Pa. May 7, 2014). In this regard, the role of a federal court is confined to reviewing the substance of the state parole decision to determine whether the Parole Board violated the petitioner's substantive due process rights by exercising its authority in an arbitrary and capricious, or

constitutionally impermissible manner. *See Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).

To show a violation of substantive due process, a habeas petitioner must demonstrate that: (1) they were arbitrarily denied parole due to impermissible reasons such as race, religion, or political beliefs, and/or (2) the Parole Board failed to apply appropriate, rational criteria in reaching its determination to deny parole. *See id.* at 236; *Bonsall v. Gillis*, 372 F. Supp. 2d 805, 807 (M.D. Pa. 2005). "However, federal courts are not authorized by the due process clause to second-guess parole boards[,] and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady*, 251 F.3d at 487. The "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" *Hunterson v. DiSabato*, 308 F.3d 236, 247 (3d Cir. 2002) (citation omitted).

## III. <u>Discussion</u>

In the habeas petition, Barker appears to challenge the September 27, 2023, September 23, 2024, and October 14, 2025 Parole Board decisions. (Doc. 1). In response, Respondents argue that the petition must be denied on the following grounds: (1) the September 27, 2023 and September 23, 2024 parole denials are not challenged within the statute of limitations, and the most recent parole decision renders any challenges to prior decisions moot; (2) Barker failed to exhaust his remedies with respect to the October 14,

6

2025 Parole Board decision; and (3) Barker is not in custody in violation of the Constitution or laws of the United States. (Docs. 11, 12).

### A. Any Challenges to Parole Board Decisions Prior to October 14, 2025 will be Dismissed

Barker appears to contest the Board's parole decisions on September 27, 2023, September 23, 2024, and October 14, 2025. (Doc. 1, at 2, stating that he "received three (3) consecutive parole hits from the Pennsylvania Parole Board"). Respondents argue that the Court can only consider the Board's most recent parole denial on October 14, 2025. (Doc. 12, at 4-5). The Court agrees.

Because the Board denied Barker parole most recently on October 14, 2025, his challenges to the parole decisions in 2023 and 2024 are moot. As another District Court has explained:

> In many habeas cases, the crucial issue with respect to mootness is whether 'some concrete and continuing injury other than the now-ended incarceration or parole' might still be amenable to remedy. *Spencer[ v. Kemma*, 523 U.S. 1, 7 (1998)]. In other words, there still may be a case or controversy before the court – even if the injury that a complaining party seeks to remedy through litigation no longer exists – if there is a 'collateral injury' that is 'likely to be redressed by a favorable judicial decision.' *Id.* (quoting *Lewis[ v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)]); *Burkey[ v. Marberry*, 556 F.3d 142, 147-51 (3d Cir. 2009)]. This is not the case, however, in the context of a parole denial or calculation. Rather, because the only relief that a court can grant in such circumstances is a new parole hearing, a subsequent hearing held by the Parole Board renders an inmate's challenge to the prior parole decision moot.

*Pullium v. Bd. of Prob. and Parole*, No. 22-cv-00140, 2024 WL 3445462, at *2 (W.D. Pa. June 26, 2024) (citations omitted); *see also Sims v. Mahally*, No. 17-cv-01647, 2018 WL

7

5718498, at *3 (M.D. Pa. Nov. 1, 2018) ("The Parole Board has issued its most recent decision to deny Petitioner parole on January 11, 2017; therefore, to the extent that Petitioner challenges the Parole Board's decisions to deny him parole [in 2008, 2009, 2010, 2011, 2012, 2013, and 2015], these claims have been rendered moot." (citations omitted)). Therefore, the Court will only consider the Board's October 14, 2025 parole denial in this case.

     B.    <u>Exhaustion</u>

State prisoners typically must "exhaust their claims in state court before seeking relief in federal courts." *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004) (citing 28 U.S.C. § 2254(b)(1)(A)). In 2005, in *Defoy v. McCullough*, 393 F.3d 439 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that, aside from litigating an *ex post facto* claim, Pennsylvania law does not provide a mechanism by which a prisoner can challenge a parole denial. *Id.* at 445. Therefore, it held, a Pennsylvania prisoner who is challenging the denial of parole is exempt from the exhaustion requirement with respect to all other types of constitutional claims. *Id.* The continuing validity of *Defoy* has been called into question. *See, e.g., Begandy v. Pennsylvania Bd. of Prob. & Parole*, 2021 WL 1986415, at *4 (W.D. Pa. May 18, 2021); *Bradley v. Wingard*, 2017 WL 11476608, at *1 (W.D. Pa. Oct. 12, 2017), *report and recommendation adopted*, 2018 WL 10150909 (W.D. Pa. Sept. 5, 2018).

However, in this case the Court need not consider whether *Defoy* is still good law. A federal court "may bypass the exhaustion issue altogether should [it] decide that the petitioner's habeas claim fails on the merits." *Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012); *see also* 28 U.S.C. § 2254(b)(2). Because Barker's claims have no merit and because it is more efficient for the Court to deny them for that reason, the Court need not address the issue of exhaustion further. *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

C.   The Merits

Barker has no right to parole under state law. *See, e.g., Hudson v. Pennsylvania Bd. of Prob. and Parole*, 204 A.3d 392, 395 (Pa. 2019). Whether to grant him parole is left to the sole discretion of the Parole Board. *See* 61 Pa. C.S. § 6137(a)(1) (stating that, *inter alia*, the Parole Board "may release on parole any offender to whom the power to parole is granted to the board by this chapter, ... whenever in its opinion: (i) The best interests of the offender justify or require that the offender be paroled[;] (ii) It does not appear that the interests of the Commonwealth will be injured by the offender's parole"). The record clearly reflects that the Parole Board based its parole determination here on factors that it is statutorily required to consider in accordance with 61 Pa. C.S. § 6135. *See McGinnis v. Royster*, 410 U.S. 263, 277 (1973) (holding that there is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an

9

inmate's conduct and his rehabilitative progress before he is eligible for parole"). Under Section 6135, the Parole Board must consider:

> (1) The nature and circumstances of the offense committed.
> (2) Any recommendations made by the trial judge and prosecuting attorney.
> (3) The general character and background of the inmate.
> (4) Participation by an inmate sentenced after February 19, 1999, and who is serving a sentence for a crime of violence as defined in 42 Pa. C.S. § 9714(g) (relating to sentences for second and subsequent offenses) in a victim impact education program offered by the Department of Corrections.
> (5) The written or personal statement of the testimony of the victim or the victim's family submitted under section 6140 (relating to victim statements, testimony and participation in hearing).
> (6) The notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available.
> (7) The conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record.

See 61 Pa. C.S. § 6135(a)(1)-(7).

In this case, Barker has not pointed to any impermissible factor the Parole Board relied on, or any factor that could be described as conscience shocking or deliberatively indifferent. In fact, he does not address most of the Parole Board's reasons for denying him parole in October 2025, such as his (1) prior unsatisfactory supervision history, (2) minimization or denial of the nature and circumstances of his offenses, (3) refusal to accept responsibility for his offenses, (4) his lack of remorse, (5) the fact that he was a repeat offender, and (6) the nature of his crime. (Doc. 11-7). Barker only appears to address his lack of remorse by asserting that he wrote a letter to his victim. (Doc. 1, at 3). For the most

10

part, Barker essentially disagrees with the Parole Board's determination that he failed to demonstrate motivation for success insofar as he completed courses and programs while incarcerated. (Doc. 1). This disagreement does not entitle him to habeas relief.

By merely disagreeing with the Board's analysis, Barker is essentially requesting that the Court second-guess the Board, something that the Court cannot do. *See Coady*, 251 F.3d at 487. The Board explained to Barker that it reached the decision to deny him parole after interviewing him, reviewing his file, and considering the "all matters" in the Prisons and Parole Code. (Doc. 11-7). It also provided "some basis" for its decision insofar as it provided six minimally detailed reasons for denying parole, none of which were based on impermissible factors. *Coady*, 251 F.3d at 487. Overall, Barker has failed to meet his burden of demonstrating that the Board violated his constitutional rights in denying parole on October 14, 2025. Accordingly, the Court will deny his Section 2254 petition.

### IV.  Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of [their] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

11

*Cockrell*, 537 U.S. 322 (2003). Because reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA. Thus, the Court will decline to issue a certificate of appealability, as Barker has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## V.  Conclusion

For the foregoing reasons, the Court will deny Barker's Section 2254 habeas petition and decline to issue a certificate of appealability. A separate Order shall issue.

*s/ Robert D. Mariani*<br>
Robert D. Mariani<br>
United States District Judge

Dated: December 30th, 2025